IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-02840-PAB-CBS

JULIA COPELAND COOPER, an individual United States citizen,

    Plaintiff,

v.

NCS PEARSON, INC., a Minnesota corporation,

    Defendant.

---

**ORDER**

---

    This matter is before the Court on the motion for summary judgment [Docket No. 17] filed by defendant NCS Pearson, Inc. and the motion to supplement her opposition to the motion for summary judgment [Docket No. 29] filed by plaintiff Julia Copeland Cooper.  The motions are fully briefed and ripe for disposition.[1]

## I. BACKGROUND[2]

    This case relates to a copyrighted psychological test instrument entitled Battery of Health Improvement ("BHI").  In 1993, Daniel Bruns, J. Mark Disorbio, and a company named Battery for Health and Illness, Inc. ("BHI, Inc.), to which Bruns and Disorbio had assigned their rights in the BHI, began negotiating an agreement whereby

---

[1]The Court exercises federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 in conjunction with 28 U.S.C. § 1338(a), which grants district courts original jurisdiction over copyright cases.

[2]Unless otherwise indicated, the following facts are not in dispute.

defendant[3] would acquire intellectual property rights in the BHI.  In her role as president

of BHI, Inc., plaintiff was integrally involved in these negotiations.  On April 30, 1993,

Bruns, Disorbio, and BHI, Inc. executed assignments of their intellectual property rights

in the BHI to defendant.  Plaintiff signed these assignments on behalf of BHI, Inc.  The

assignments make clear that Bruns and Disorbio jointly held all rights in the BHI and

were thus capable of transferring such rights to defendant.  *See* Docket No. 17-3 at 30;

Docket No. 17-4 at 30.  For example, the Bruns assignment states "Assignor is a joint

author of and joint owner of all rights in an original literary work entitled 'Battery for

Health and Illness' (the 'Work') and, jointly with John Mark Disorbio, is the absolute

proprietor of the copyright and all attendant intellectual property rights of the Work."

Docket No. 17-3 at 30.[4]

Bruns, Disorbio, and BHI, Inc., through plaintiff in her role as president of the

company, then entered into a Publication Agreement (the "Agreement") effective May 4,

1993.[5]  The Agreement provides that Bruns, Disorbio, and BHI, Inc. "desire . . . to grant

[defendant] all right, title and interest in and to the [BHI] to enable [defendant] to so

publish the [BHI] and distribute products and services related to and/or embodying the

[BHI]."  Docket No. 17-5 at 6.  By executing the Agreement, Bruns, Disorbio, and BHI,

Inc. warranted, *inter alia*, that they "exclusively own all Intellectual Property Rights to the

---

[3]The negotiations occurred with a predecessor entity to defendant NCS Pearson, Inc. called National Computer Systems, Inc.

[4]The work's title was later changed to the Battery for Health Improvement.

[5]The Agreement defined the "Authors" of the BHI as Bruns, Disorbio, and BHI, Inc.  *See* Docket No. 17-5 at 6-7.

[BHI] and that no other person has an option, claim or right to the [BHI]."  Docket No. 17-5 at 10.  In exchange for receiving the unencumbered right to publish the BHI, defendant agreed to pay royalties.

In 1996, defendant published the first version of the BHI ("BHI-1").  The cover of the BHI-1 indicated that it was "by" Bruns and Disorbio, "with contributions by" plaintiff.  Plaintiff was included in the "About the Authors" section of the BHI-1.  In 1997, defendant published a work entitled "Advanced BHI Interpretation: A Guide for Generating Clinical Hypotheses with The Battery for Health Improvement," which indicated that the work was by Bruns, Disorbio, and plaintiff.  However, all copyright registrations relating to the BHI, of which plaintiff was aware, list only Bruns and Disorbio as authors.

Defendant published later editions of the BHI, namely, a brief version of the BHI in 2002 called the BBHI-2 and a full edition of the BHI in 2003 called the BHI-2.  Plaintiff's name no longer appeared on the cover page or in the About the Authors section of these BHI publications.  Instead, plaintiff received the following acknowledgment in the BBHI-2 and BHI-2:  "The authors wish to express their appreciation to [plaintiff] whose knowledge, professional expertise, and support greatly facilitated the completion of this project."  Docket No. 17-2 at 11; Docket No. 17-2 at 18.

Upon publication of the BHI-1 in 1996, defendant began sending royalty payments to plaintiff in her role as president of BHI, Inc.  Plaintiff then distributed half of each payment to Bruns and Disorbio, respectively.  Plaintiff never distributed any of the royalty payments to herself.  In 2001, Bruns and Disorbio requested that defendant send their respective half shares to them directly, which defendant has done since

3

September 2001.  Plaintiff never demanded a royalty share from Disorbio, Bruns, or

defendant.  Between 1993 and 2008, plaintiff never informed defendant that she had

any authorship rights in the BHI.

In 2009, however, plaintiff asserted authorship rights in correspondence with

defendant.  On November 19, 2010, plaintiff initiated the present action seeking a

declaration of such rights.  In her verified complaint, plaintiff seeks a "one-third

undivided copyright ownership interest in the [BHI]" and "requests an accounting and

payment from defendant and others . . . of their past, present, and future profits

traceable to the use of and benefit from the [BHI] or any portion thereof."  Docket No. 1

at 8-9, ¶ 58.  Plaintiff did not name Bruns or Disorbio as defendants.  Plaintiff also

seeks to have defendant "give her authorship credit comparable to and in the same

manner such credit is given to Daniel Bruns and J. Mark Disorbio."  Docket No. 73 at 2.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City &*

*County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of*

*Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010).  A

disputed fact is "material" if under the relevant substantive law it is essential to proper

disposition of the claim.  *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir.

2001).  Only disputes over material facts can create a genuine issue for trial and

preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198

(10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a

reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119

F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a

court must view the evidence in the light most favorable to the non-moving party. *Id.*;

*see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III.  DISCUSSION

Defendant argues that it is entitled to summary judgment because, among other

reasons, plaintiff's claims are barred by the applicable statute of limitations.  Plaintiff's

claim arises under the federal copyright laws.  *See* 17 U.S.C. § 101 *et seq.*  Section

507(b) of the Copyright Act provides that "[n]o civil action shall be maintained under the

provisions of this title unless it is commenced within three years after the claim

accrued."  17 U.S.C. § 507(b).  "A cause of action for copyright infringement under

section 507(b) of the Copyright Act accrues 'when one has knowledge of a violation or

is chargeable with such knowledge.'" *Fisher v. United Feature Syndicate, Inc.*, 37 F.

Supp. 2d 1213, 1216 (D. Colo. 1999) (quoting *Roley v. New World Pictures, Ltd.*, 19

F.3d 479, 481 (9th Cir. 1994)).  Because section 507(b) is silent regarding the accrual

of a copyright claim, "a claim accrues when the plaintiff knows or has reason to know of

the existence and cause of the injury which is the basis of his action." *Home Design

Services, Inc. v. B & B Custom Homes, LLC*, 509 F. Supp. 2d 968, 972 (D. Colo. 2007).

The undisputed facts reveal that plaintiff's claim against defendant accrued no

later than 1996 and is therefore barred by the applicable statute of limitations.  Upon

the execution of the assignments and the Agreement in 1993, plaintiff was on notice that defendant believed that, in exchange for making royalty payments to BHI, Inc., it was acquiring "all Intellectual Property Rights to the [BHI] and that no other person has an option, claim or right to the [BHI]."  Docket No. 17-5 at 10.[6]  Yet, plaintiff did not assert her rights within three years of the Agreement's execution.  *See Big East Entertainment, Inc. v. Zomba Enterprises, Inc.*, 453 F. Supp. 2d 788, 794 (S.D.N.Y. 2006) ("'An express assertion of sole authorship or ownership will start the copyright statute of limitations running.'") (quoting *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1315 (S.D.N.Y.1997) (alteration removed).

Even assuming that plaintiff's claim did not accrue in 1993, it clearly ripened upon the publication of the BHI-1 in 1996.  In the present action, plaintiff seeks to be credited in the same manner as Bruns and Disorbio and requests payment for the use of material she claims to have co-authored.  It is undisputed, however, that upon publication of the BHI-1 in 1996, plaintiff knew (1) that, regardless of how one might characterize the credit she received on the BHI-1, she was not credited "in the same manner" as Bruns and Disorbio, Docket No. 73 at 2, and (2) that she was not receiving any payments for her alleged one-third right to the copyrighted work.  *See Carell v. Shubert Organization, Inc.*,104 F. Supp. 2d 236, 249 (S.D.N.Y. 2000) ("Although plaintiff contends that defendants appeared to recognize her 'proprietary interest' in the Makeup Designs before 1992, she has never received royalty payments from

_____

[6]Plaintiff points out that she did not sign the Agreement in her individual capacity. She does not explain how this fact is relevant to her knowledge regarding respective rights in the BHI.  Nor does she dispute that she had knowledge of the Agreement's contents.

defendants for use of her copyrights.  Thus, although defendants did not directly acknowledge their repudiation of plaintiff's rights during the 1980s, their non-payment of royalties should have put her on notice of this fact."); *see also Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 91 (1st Cir. 2007).[7]

The only disputed fact plaintiff identifies relating to her knowledge in the 1993-1996 time period is her assertion that Disorbio, her husband at the time, told her before executing the Agreement that, "because she was not a clinical psychologist[,] she could not appear as an author on legal documents such as the . . . Agreement relating to a psychological test instrument."  Docket No. 23 at 6, ¶ 41.  To the extent she understood this statement to address only the rules regarding authorship credit in the field of clinical psychology, it has no relevance to whether she believed she had an enforceable interest in the BHI works.  In fact, plaintiff's arguments in support of the contention that her claim did not accrue until 2009 appear to be based on her belief all those years that she did have such authorship rights, which contradicts her argument that she believed

_____

[7]The parties focus most of their energy addressing what plaintiff learned or should have learned in the years following, particularly in relation to the publication of the BBHI-2 and the BHI-2.  Plaintiff's claim to authorship of all the BHI works, however, derives from her contributions to the BHI-1.  No disputed fact identified by plaintiff casts into doubt that she knew the facts supporting her present claim no later than 1996 and that nothing happened upon the publication of later editions in 2002 and 2003 that would have prevented her from asserting her authorship rights.  For this reason, plaintiff's motion to supplement her opposition to defendant's motion for summary judgment [Docket No. 29], which relates to certain facts she may have learned in 2003 regarding how she was being credited, will be denied as moot.  The Court does note, however, that plaintiff admits to having been told by an unidentified individual in 2003 that she was no longer receiving credit as a contributor on certain BHI-related documents, a fact she confirmed with Disorbio.  *See* Docket No. 29-1 at 1-2, ¶¶ 3-7.

Disorbio.  *See, e.g.*, Docket No. 23 at 7, ¶ 43 ("[Plaintiff] believed prior to the middle of

2009 that she was still receiving credit as a contributor, developer and a coauthor of the

BHI because she was listed on the original BHI-1 materials and was repeatedly given

credit as a contributor and a coauthor of the BHI-1 by the Defendant, by Disorbio and

by Bruns from the 1990's through the filing of the lawsuit."); *id.* at 7, ¶ 42 ("In the 1990's

and into the 2000's, [plaintiff] was recognized as an author and/or contributor to at least

the BHI-1 and the BBHI-2 in . . . narrative reports.  [Plaintiff] saw one of these reports in

or about 2006 with a 2002 copyright notice that continued to give her credit as a

contributor to the BBHI-2.") (citations omitted); *id.* at 7, ¶ 44 ("Additionally, from 2003-

2009[, plaintiff] saw documentation such as the 2009 newsletters prepared by the

Defendant . . . that specified [plaintiff] had developed the BHI.").[8]

     And, assuming plaintiff understood Disorbio's statement to relate to legal rights in

the BHI works, *see* Docket No. 23 at 7, ¶ 41 (averring that, "prior to 2009[, she] lacked

knowledge about a coauthor's copyright ownership in a joint work"), the Court has

identified no reason why that would toll the accrual of her claim, the factual basis of

which she was fully aware as of 1996.  *See Gatewood v. Railroad Retirement Bd.*, 88

F.3d 886, 890 (10th Cir. 1996) ("[W]e are aware of no authority . . . which suggests that

---

[8]The Court also notes that plaintiff has not brought a copyright infringement claim
against defendant.  *Cf. Davis v. Meridian Films, Inc.*, 14 F. App'x 178, 182 (4th Cir.
2001) ("[T]o conclude, as the district court did, that an infringement claim is time-barred
when the underlying authorship claim is time-barred would be to fail to recognize that a
new infringement claim accrues every time an infringement occurs."); *Carell v. Shubert
Organization, Inc.*, 104 F. Supp. 2d 236, 252 (S.D.N.Y. 2000) ("[W]hile a dismissal of an
ownership claim as time-barred bars certain remedies associated with ownership, it
does not extinguish the right of a copyright owner to sue for infringement.  A copyright
owner can recover for infringing actions that occur within three years of filing; only
infringement claims beyond three years of suit are barred.").

ignorance of the law should warrant equitable tolling of a statute of limitations."); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.") (citation omitted).  Tolling of the statute of limitations is especially inappropriate based on her reliance on the legal opinion of a clinical psychologist as opposed to an attorney.[9]  Furthermore, plaintiff does not address how Disorbio's statement is relevant to the accrual of her claim against the defendant in any event.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that this declaratory judgment action is barred by the statute of limitations.  Therefore, it is

**ORDERED** that defendant's motion for summary judgment [Docket No. 17] is GRANTED.  Judgment shall enter in favor of defendant and against plaintiff.  It is further

**ORDERED** that plaintiff's motion to supplement her opposition to the motion for summary judgment [Docket No. 29] is denied as moot.  It is further

**ORDERED** that the trial preparation conference scheduled for June 8, 2012 and the trial scheduled to commence on June 25, 2012 are VACATED.  It is further

---

[9] *Cf. Memorylink Corp. v. Motorola, Inc.*, 2009 WL 464338, at *6 (N.D. Ill. Feb. 23, 2009) ("Memorylink contends that Strandwitz and Kniskern were unaware that they were giving up some of their ownership rights when they signed the Assignment. The Court is hard pressed to understand how this can be true given that the Assignment is relatively clear.  Specifically, the Assignment states the parties, 'hereby also sell, assign and transfer unto the said Motorola, Inc., and Memorylink Corp., jointly and equally, the entire right, title and interest in and to said invention . . .'  Motorola's name is not buried in the fine print, nor is the language difficult to understand.  If Memorylink had doubts about the Assignment, they should have either refused to sign it or consulted a lawyer.") (citation omitted).

**ORDERED** that this case shall be closed in its entirety.


DATED February 22, 2012.

BY THE COURT:


s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge